FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2012 SEP 21 AM 8: 32

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE, FLORIDA

GREAT CHINA MANIA HOLDINGS,
INC., a Florida Corporation; HUANG
JIAN NAN, a nonresident; ZENG ZHI
JIAN, a nonresident; and TAM KIN
PONG, a nonresident,

    Plaintiffs,

v.

CMF INVESTMENTS, INC., a Florida
Corporation; EIGER INVESTMENTS,
INC., a Foreign Corporation; PRISM
CAPITAL, INC., a Foreign Corporation;
and SEO GROUP CONSULTANTS,
INC., a Foreign Corporation;
SCOTTSDALE CAPITAL ADVISORS,
an Arizona Corporation; ALPINE
SECURITIES, a Utah Corporation; and
APEX CLEARING CORPORATION, a
Texas Corporation,

    Defendants.

Case No. 3:12-CV-1042-J-32 TEM

## VERIFIED COMPLAINT

    Plaintiffs, Great China Mania Holdings, Inc. ("Great China Mania"), Huang Jian

Nan ("Nan"), Zeng Zhi Jian ("Jian") and Tam Kin Pong ("Pong"), through their counsel,

Adams and Reese LLP, file this Complaint for Damages and Injunctive Relief and state

as follows:

### NATURE OF THE CASE

    1.    This is an action for rescission and for Defendants' violation of Section

10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, violation of Florida's

Investor Protection Act, Statute 517.301, Conversion, Fraudulent Inducement, Breach of

1

Contract, and Unjust Enrichment. Plaintiffs also seeks injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure and the Middle District's local rule 4.05 to prevent Defendants from trading, selling, disposing, negotiating, or transferring shares they previously obtained unlawfully from Plaintiffs. Shares issued to Defendants from Plaintiffs were done so without payment, consideration, or benefit to Plaintiffs. The shares were improperly issued and taken for Defendants' unlawful gain. Based on information and belief, the subject shares are currently deposited with various clearing houses and/or brokerage firms in preparation for trading on the public markets. For this reason, Plaintiffs have named Scottsdale Capital Advisors, Alpine Securities, and APEX Clearing Corporation as defendants solely for the purpose to enjoin future trading of the disputed shares.

## THE PARTIES

2.      Plaintiff, Great China Mania Holdings, Inc. is a Florida Corporation doing business in China and Hong Kong. Great China Mania is a publicly traded reporting company pursuant to the Securities Exchange Act of 1934. Great China Mania engages in the provision artiste and project management services, publication of magazines, retail operation of video games and accessories, and investment activities. It organizes artists to participate in movies, event management, and promotion for its clients. The company publishes eight weekly or bi-weekly magazines that specialize in computer technologies, video games, digital equipment, and automobiles. It operates two retail stores to sell video game machines, as well as video games and accessories.

3.       Plaintiff, Huang Jian Nan, is a nonresident who currently resides in Hong Kong.  Mr. Nan was a shareholder of Great China Mania Holding, Inc. as more fully referenced below.

4.       Plaintiff, Zeng Zhi Jian, is a nonresident who currently resides in Hong Kong.  Mr. Jian was a shareholder of Great China Mania Holding, Inc. as more fully referenced below.

5.       Plaintiff, Tam Kin Pong, is a nonresident who currently resides in Hong Kong..  Mr. Pong was a shareholder of Great China Mania Holding, Inc. as more fully referenced below.

6.       Upon information and belief, Defendant, CMF Investments, Inc. ("CMF") is a domestic corporation that has its principal place of business at 8520 Glenbury Ct. N., Jacksonville, Florida 32256 as identified in the attached contract.  Additionally, all material communications with CMF have occurred with its identified representative located in Jacksonville, Florida.  CMF procured 3,400,000 shares of Great China Mania through unlawful means and without consideration or payment.

7.       Upon information and belief, Defendant, Eiger Investments, Inc. ("Eiger") is a foreign corporation that has a principal place of business at Hunkins Waterfront Plaza, P.O. Box 557, Charlestown, Saint Kitts and Nevis.  Eiger procured 2,980,000 shares of Great China Mania through unlawful means and without consideration or payment.

8.       Upon information and belief, Defendant, Prism Capital Inc. ("Prism") is a foreign corporation that has a principal place of business at Suite 307, Griffin Corporate Center, P.O. Box 1512, Beachmont Kingstown, St. Vincent and the Grenadines, West

Indies.  Prism procured 3,300,000 shares of Great China Mania through unlawful means and without consideration or payment.

9.      Upon information and belief, Defendant, SEO Group Consultants, Inc. ("SEO") is  a foreign corporation  that has a principal place of business at 7 New Road, Second Floor, #6 Belize City, Belize.  SEO procured 3,130,000 shares of Great China Mania through unlawful means and without consideration or payment.

10.      Defendant, Scottsdale Capital Advisors ("Scottsdale"), is an Arizona corporation that has a principal place of business at 7170 E. McDonald Drive, Suite 6, Scottsdale, Arizona 85253.

11.      Defendant, Alpine Securities Corporation ("Alpine"), is  a  Utah corporation  that has a principal place of business at 440 East 400 South, Salt Lake City, Utah 84111.  Alpine currently holds various disputed shares of Great China Mania at Defendant(s)' request.

12.      Defendant, APEX Clearing Corporation ("Apex") is a Texas corporation that has a principal place of business at 1700 Pacific Ave., Suite 1400, Dallas, Texas 75201.   Apex currently holds various disputed shares of Great China Mania at Defendant(s)' request.

13.      CMF, Eiger, Prism, and SEO shall be individually referred to as above or collectively referred to as the "Defendants" hereafter.  Scottsdale, Alpine, and Apex shall be individually referred to as above or collectively be referred to as the "Brokerage Firms" hereafter.

## JURISDICTION

14.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa as Plaintiff alleges violation of the Securities Exchanges Act of 1943.  This Court has supplemental jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367.

15.     Pursuant to Rule 4(k)(1) and Section 48.193, Florida Statutes, this Court has personal jurisdiction over the Defendants as each have undertaken personally or through an agent operated, conducted or engaged in, or having an office or agency in this state, committing a tortuous act within this state on a Florida corporation and its shareholder, and having engaged in substantial and not isolated activity within this state as more fully alleged below.  Further, each of the Defendants are wrongly in possession of shares of stock in a Florida Corporation.  Accordingly, the Court's exercise of personal jurisdiction over these defendants does not offend the traditional notions of fair play and substantial justice.  The Court has personal jurisdiction over the Brokerage Firms as each entity current holds in their possession millions of shares of a Florida corporation. Additionally, each of the Brokerage Firms offers brokerage services involving selling, holding, transferring, and negotiating shares of a Florida corporation as more fully alleged below. Court's exercise of personal jurisdiction over the Brokerage Firms does not offend the traditional notions of fair play and substantial justice.

## VENUE

16.     Venue is proper in this Court's Jacksonville Division pursuant to 28 USC 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property at issue was delivered to Defendant, CMF

Investments, Inc. who maintains its place of business is in Jacksonville, Florida. Alternatively, venue is proper pursuant to 28 USC 1391(b)(3), (c)(3) as a judicial district in which at least one of the defendants, CMF Investments, Inc., is subject to the Court's personal jurisdiction and the balance of the Defendants, as that term is defined above, are not residents of the United States. The Brokerage Firms are nominal defendants solely for the purpose of the injunctive relief sought herein.

## CONDITIONS PRECEDENT

17.    All conditions precedent have been performed or have occurred.

## FACTUAL ALLEGATIONS

### Defendants Obtain Shares from Plaintiffs Under False Pretenses and Without Consideration or Render of Agreed Services

18.    Defendants contacted the Plaintiffs, by and through, a single representative named Jamal "Chris" Kabiri who represented that the Defendants collectively desired to acquire shares of Great China Mania.

19.    After months of negotiations and representations regarding the Defendants' principals ability to pay, the source of funds, and intent to purchase and invest in Great China Mania, on or about February 2, 2012 and March 2, 2012, Plaintiffs Nan, Jian and Pong, each holding large stakes in Great China Mania, exchanged a total of 12,810,000 shares of the company to CMF, Prism, Eiger, and SEO. A true and correct copy of the Stock Purchase Agreements are attached as Composite Exhibit "A". The 12,810,000 shares were divided as follows:

a.  CMF – 3,400,000 shares;

b.  Eiger – 2,980,000 shares;

c.  Prism – 3,300,000 shares;

    d.  SEO – 3,130,000 shares.

20.    As noted in the attached Stock Purchase Agreements, Plaintiffs sold the shares to Defendants in exchange for certain monetary consideration.

21.    Shortly after the execution of the Stock Purchase Agreements, it became apparent to Plaintiffs that the Defendants had no intention of performing and had defrauded Plaintiffs into transferring the shares for no consideration. Upon information and belief, the Defendants, by and through their representative, troll the internet and other various media searching for companies to procure shares without tendering any consideration.

22.    On August 24, 2012, through counsel, Plaintiffs issued demand letters to CMF, Prism, Eiger, and SEO detailing that the shares were transferred without consideration and notifying each of Plaintiffs rescission of the agreements, and return of the shares. A true and correct copy of the Demand Letters are attached as Exhibit "B". Defendants ignored Plaintiffs' request and refused to return the shares.

23.    Plaintiffs subsequently determined that the Defendants were attempting to sell the respective shares on the open market. Upon information and belief, the Plaintiffs understand that the Defendants had deposited the shares with the Brokerage Firms in furtherance of their intent. With that, on September 5, 2012, Plaintiffs issued additional demand letters to the Brokerage Firms demanding that each immediately freeze the shares and prevent any trading of the same. A true and correct copy of the Demand Letters to Brokerage Firms are attached as Exhibit "C".

24.    In addition, Plaintiffs, through counsel, issued the following notices to the Defendants:

Pursuant to our discussions and good faith attempt to resolve this issue we agreed to wait until September 5th to either return the shares to our client or make a payment in trust as recompense. That time has now expired and neither the shares nor any payment has come forth on behalf of our client. In fact, we find it particularly egregious and repugnant that our good faith attempt resulted in yet another fraudulent scheme with the creation of fake bank documents. You leave us no choice but to terminate all attempts to resolve this matter though discussion and to further abandon any hope of witnessing honest efforts from your offices leading to a positive resolution.

A true and correct copy of the September 5, 2012 letters to CMF, Prism, Eiger, and SEO are attached as Exhibit "D".

25.    The reference to fake bank documents relates to the Defendants, by and through their representative, claiming that US $100,000.00 had been wire transferred to Plaintiffs counsels' trust account as a good faith payment towards the sums that were due. The Defendants' representative produced said document to perpetuate their fraud and delay Plaintiffs' attempts to take legal action as no wire transfer was ever initiated or received by Plaintiffs' counsel.

26.    As of September 19, 2012, Defendants CMF, Prism, Eiger, and SEO continue to refuse to return the disputed shares and intend to immediately trade the shares in the open market **at any price regardless of the current fair market value for their own gain**.  It is clear that the Defendants have attempted to stall the Plaintiffs throughout this entire time in an effort to sell the shares for their own gain perpetuating their fraudulent scheme.

### Plaintiffs Face Immediate and Irreparable Harm Should Defendants Sell the Shares on the Public Market

27.    Without issuance of a temporary restraining order, Defendants may immediately trade all 12,810,000 shares of Great China Mania's stock on the open market resulting in immediate, irreparable harm to the company.  By flooding the open

market with 12,810,000 shares of the approximate 70,000,000 total shares of Great China Mania, the Defendants will materially impact the value of the remaining outstanding shares. In addition, by flooding the open market with 12,810,000 shares, Defendants will immediately and irreparably destroy shareholder confidence in the company, causing the remaining shareholders to sell their shares on the market at a baseless price further depreciating the fair market value. Should this occur, Great China Mania's investor confidence in the company will be virtually destroyed, causing existing investors to call their notes, sell their shares, and/or cause potential investors to avoid investing in the company. Finally, should the 12,810,000 shares flood the open market, vendor confidence in Great China Mania may be severely impacted which could prevent existing and future vendors and customers from business dealings.

28.     Plaintiffs are entitled to a permanent and temporary restraining order in this matter because they will suffer irreparable harm if the Defendants and Brokerage Firms are not enjoined, because they have no adequate remedy at law, and because they are more than likely to succeed on the merits of their case. Further, the balance of the equities strongly supports the issuance of a restraining order under the aforementioned circumstances as public interest supports the legitimate trading of securities at fair market value.

29.     Scottsdale has agreed to freeze the trading of the subject shares in its possession through September 19, 2012 which represents that the irreparable injury as more fully addressed herein is imminent so that notice and a hearing on the application for preliminary injunction requested in this action is impractical if not impossible. Additionally, the Defendants, as noted above, have threatened to immediately sell the

shares on the open market which represents that immediate and irreparable injury will occur before the Defendants can be heard in opposition.

30.     As required by the Middle District's local rule 4.05, Plaintiffs have filed a separate Motion for Temporary Restraining Order simultaneously with this Complaint.

**COUNT I**

**Rescission and Injunctive Relief**

31.     Paragraphs 1 through 30 are hereby realleged and incorporated for reference as if fully set forth herein.

32.     The Plaintiffs and Defendants entered into the foregoing agreements for exchange of stock for monetary consideration.

33.     The parties consummated these agreements through the Stock Purchase Agreements (Composite Exhibit "A").

34.     Defendants made the foregoing false representations to induce Plaintiffs to enter into Stock Purchase Agreements and transfer the shares, the Plaintiffs were induced by said material misrepresentations and relied on the same in transferring the shares to the Defendants. Despite not having provided any consideration for the subject shares, the Defendants refuse to return the shares to the Plaintiffs, have stalled and used fraudulent artifices in promising subsequent payment in an effort to delay so that they could attempt to sell the shares to third parties through the Brokerage Firms at below market value to cause irreparable harm to the Plaintiffs as alleged above.

35.     Plaintiffs have notified Defendants they have rescinded the Stock Purchase Agreements and have demanded the return of the shares.

36.     As the Defendants have provided no consideration for the shares, there are no benefits to be restored.   To the extent the Defendants prove any benefits were provided, the Plaintiffs offer to restore the same.

37.     In accordance with Federal Civil Rule of Procedure 65, based on the forgoing, and for the reasons explained further in Plaintiffs' Motion for Temporary Restraining Order filed simultaneously with this Complaint and incorporated herein by reference, Plaintiffs show that they have a substantial likelihood of success on the merits in this action, that imminent irreparable injury will be suffered unless an injunction is issued, that the threatened injury to the Plaintiffs outweigh whatever damage the proposed injunction may cause the Defendants, and if issued, the injunction would not be adverse to the public interest as a restraining order will serve the public interest by ensuring that the outstanding shares of Great China Mania being traded on the open market are based upon fair market value, and said injunction will otherwise maintain the integrity of the securities markets.

38.     Plaintiffs have no other adequate remedy available at law as more fully alleged above.

WHEREFORE, Plaintiffs demand judgment against Defendants for rescission of the stock purchase agreements, a temporary and permanent injunction prohibiting Defendant CMF Investments, Inc., or any other agent or attorney from trading, selling, disposing, negotiating, transferring, or absconding the 3,400,000 shares of which are the subject matter of Plaintiffs' allegations in the Complaint;   a temporary and permanent injunction prohibiting Defendant Eiger Investments, Inc., or any other agent or attorney, from trading, selling, disposing, negotiating, transferring, or absconding the 2,980,000

shares of which are the subject matter of Plaintiffs' allegations in the Complaint; a temporary and permanent injunction prohibiting Defendant Prism Capital, Inc., or any other agent or attorney from trading, selling, disposing, negotiating, transferring, or absconding the 3,300,000 shares of which are the subject matter of Plaintiffs' allegations in the Complaint; a temporary and permanent injunction prohibiting Defendant SEO Group Consultants, Inc., or any other agent or attorney from trading, selling, disposing, negotiating, transferring, or absconding the 3,130,000 shares of which are the subject matter of Plaintiffs' allegations in the Complaint; a temporary and permanent injunction prohibiting Defendants Scottsdale Capital Advisors, Alpine Securities, and Apex Clearing Corporation from trading the disputed shares in their possession and returning the same to the Plaintiffs, costs, and such other relief as this Court may deem just and proper.

## COUNT II

### Rescission and Injunctive Relief
### Pursuant to the Securities Exchange Act of 1934 Section 29(b)

39.   Paragraphs 1 through 30 are hereby realleged and incorporated for reference as if fully set forth herein.

40.   Section 29(b) of the Securities and Exchange Act of 1934 states:

Every contract made in violation of any provision of this title or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or heretoafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this title or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the

facts by reason of which the making or performance of such contract was
in violation of any such provision, rule, or regulation

(Securities Exchange Act of 1934, §29(b)).

41.    The parties consummated their agreements through Stock Purchase
Agreements (Composite Exhibit "A").

42.    At all material times as referenced above, the Defendants through
commission or omission, employed devices, schemes, and artifices to defraud; made
untrue statements of material fact or omitted to state material facts necessary to make the
statements not misleading; and/or engaged in acts, practices, and a course of business
which operated, or was intended to operate, as a fraud and deceit upon Plaintiffs in order
to procure the shares for no consideration.

43.    Each of the Defendants used the means or instrumentalities of interstate
commerce, the mail, email, or other facilities of a national securities exchange in
undertaking the conduct described above in securing the shares without the provision of
consideration.

44.    Each of the Defendants' acts or omissions occurred in connection with the
purchase or sale of the stock of Great China Mania Holdings, Inc.

45.    Each of the Defendants' acts or omissions were made with scienter as they
intended to procure the subject shares without consideration and now threaten to sell the
same at price lower than fair market value for their own profit and gain.

46.    Defendants made the foregoing false representations to induce Plaintiffs to
enter into Stock Purchase Agreements and transfer the shares, the Plaintiffs were induced
by said material misrepresentations and relied on the same in transferring the shares to
the Defendants. Despite not having provided any consideration for the subject shares, the

13

Defendants refuse to return the shares to the Plaintiffs, have stalled and used fraudulent artifices in promising subsequent payment in an effort to delay so that they could attempt to sell the shares to third parties through the Brokerage Firms at below market value to cause irreparable harm to the Plaintiffs as alleged above.

47.    Such actions by Defendants are in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.

48.    Accordingly, the Stock Purchase Agreements are void and Plaintiffs are entitled to return of the shares.

49.    Plaintiffs have notified Defendants they have rescinded the Stock Purchase Agreements and have demanded the return of the shares.

50.    In accordance with Federal Civil Rule of Procedure 65, based on the forgoing, and for the reasons explained further in Plaintiffs' Motion for Temporary Restraining Order filed simultaneously with this Complaint and incorporated herein by reference, Plaintiffs show that they have a substantial likelihood of success on the merits in this action, that imminent irreparable injury will be suffered unless an injunction is issued, that the threatened injury to the Plaintiffs outweigh whatever damage the proposed injunction may cause the Defendants, and if issued, the injunction would not be adverse to the public interest as a restraining order will serve the public interest by ensuring that the outstanding shares of Great China Mania being traded on the open market are based upon fair market value, and said injunction will otherwise maintain the integrity of the securities markets.

51.    Plaintiffs have no other adequate remedy available at law.

WHEREFORE, Plaintiffs demand judgment against Defendants for rescission of

the stock purchase agreements, a temporary and permanent injunction prohibiting Defendant CMF Investments, Inc., or any other agent or attorney from trading, selling, disposing, negotiating, transferring, or absconding the 3,400,000 shares of which are the subject matter of Plaintiffs' allegations in the Complaint; a temporary and permanent injunction prohibiting Defendant Eiger Investments, Inc., or any other agent or attorney, from trading, selling, disposing, negotiating, transferring, or absconding the 2,980,000 shares of which are the subject matter of Plaintiffs' allegations in the Complaint; a temporary and permanent injunction prohibiting Defendant Prism Capital, Inc., or any other agent or attorney from trading, selling, disposing, negotiating, transferring, or absconding the 3,300,000 shares of which are the subject matter of Plaintiffs' allegations in the Complaint; a temporary and permanent injunction prohibiting Defendant SEO Group Consultants, Inc., or any other agent or attorney from trading, selling, disposing, negotiating, transferring, or absconding the 3,130,000 shares of which are the subject matter of Plaintiffs' allegations in the Complaint; a temporary and permanent injunction prohibiting Defendants Scottsdale Capital Advisors, Alpine Securities, and Apex Clearing Corporation from trading the disputed shares in their possession and returning the same to the Plaintiffs, attorneys fees and costs, and such other relief as this Court may deem just and proper.

## COUNT III

**Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5
(15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5)**

52.     Paragraphs 1 through 26 are hereby realleged and incorporated for reference as if fully set forth herein.

53.     Section 10(b) of the Securities and Exchange Act and Rule 10b-5 promulgated thereunder prohibit (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact or omitting to state material facts necessary to make the statements not misleading; and/or (c) engaging in acts, practices and a course of business which operates or would operate as a fraud and deceit upon any person or entity in connection with the purchase or sale of any security.

54.     At all material times as referenced above, the Defendants through commission or omission, employed devices, schemes, and artifices to defraud; made untrue statements of material fact or omitted to state material facts necessary to make the statements not misleading; and/or engaged in acts, practices, and a course of business which operated, or was intended to operate, as a fraud and deceit upon Plaintiffs.

55.     Each of the Defendants used the means or instrumentalities of interstate commerce, the mail, email, or other facilities of a national securities exchange in undertaking the conduct described above in securing the shares without the provision of consideration.

56.     Each of the Defendants' acts or omissions occurred in connection with the purchase or sale of the stock of Great China Mania Holdings, Inc.

57.     Each of the Defendants' acts or omissions were made with scienter as they intended to procure the subject shares without consideration and now threaten to sell the same at price lower than fair market value for their own profit and gain.

58.     By reason of the foregoing allegations, Defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78j(b) and Rule 10b-5, 17 C.F.R. Section 240.10b-5, thereunder.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and such other relief as this Court may deem just and proper.

## COUNT IV

### Violation of Florida Securities and Investor Protection Act, Section 517.301, Florida Statutes

59.     Paragraphs 1 through 26 are hereby realleged and incorporated for reference as if fully set forth herein.

60.     Section 517.301 of Florida's Securities and Investor Protection Act prohibits (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact or omitting to state material facts necessary to make the statements not misleading; and/or (c) engaging in acts, practices and a course of business which operates or would operate as a fraud and deceit upon any person or entity in connection with the purchase or sale of any security.

61.     At all material times as referenced above, Defendants through commission or omission, employed devices, schemes, and artifices to defraud; made untrue statements of material fact or omitted to state material facts necessary to make the statements not misleading; and/or engaged in acts, practices, and a course of business which operated, or was intended to operate, as a fraud and deceit upon Plaintiffs.

62.     Each of the Defendants used the means or instrumentalities of interstate commerce, the mail, email, or other facilities of a national securities exchange in undertaking the conduct described above in securing the shares without the provision of consideration.

63.     Each of the Defendants' acts or omissions occurred in connection with the purchase or sale of the stock of Great China Mania Holdings, Inc.

64.     Each of the Defendants' acts or omissions were made with scienter, recklessness, or gross negligence as they procured the subject shares without consideration and now threaten to sell the same at price lower than fair market value for their own profit and gain.

65.     By reason of the foregoing allegations, Defendants violated Section 517.301 of the Florida Statutes.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and such other relief as this Court may deem just and proper.

## COUNT VI

### Conversion

66.     Paragraphs 1 through 26 are hereby realleged and incorporated for reference as if fully set forth herein.

67.     Defendant, CMF, obtained 3,400,000 shares of Great China Mania Holdings, Inc. by an unauthorized and unlawful act that permanently deprived Plaintiffs of their property.

68.     Defendant, Eiger, obtained 2,980,000 shares of Great China Mania Holdings, Inc. by an unauthorized and unlawful act that permanently deprived Plaintiffs of their property.

69.     Defendant, Prism, obtained 3,300,000 shares of Great China Mania Holdings, Inc. by an unauthorized and unlawful act that permanently deprived Plaintiffs of their property.

70.     Defendant, SEO, obtained 3,130,000 shares of Great China Mania Holdings, Inc. by an unauthorized and unlawful act that permanently deprived Plaintiffs of their property.

71.     The Defendants remitted no consideration for the issuance of the shares to the sellers. Defendants do not rightfully own the shares in their current possession.

72.     Despite repeated demand, Defendants have refused to return the shares and further the Defendants threaten to sell, trade, or transfer the shares to a third party and cause irreparable harm.

73.     Defendants acted jointly and severally, and their conduct was willful, unreasonable, and in bad faith entitling Plaintiff an award of punitive damages and reasonable attorneys' fees in addition to any injunctive relief.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and such other relief as this Court may deem just and proper.

## COUNT VII

### Fraudulent Inducement

74.     Paragraphs 1 through 26 are hereby realleged and incorporated for reference as if fully set forth herein.

75.     Defendants made false statements in the Stock Purchase Agreements and other agreements; namely that Defendants would pledge certain funds as consideration

for the sale of Great China Mania stock as well as provide the company with certain investor relation services.

76.     Each of the foregoing misrepresentations were material to and made in connection with the sale of the subject stock certificates

77.     In making the foregoing misrepresentations, Defendants knew that the misrepresentations were false at the time made, or were severely reckless in not recognizing that the statements were false.

78.     Defendants intended that Plaintiffs would rely on these misrepresentations in entering into the stock purchase agreements and other agreements.     In selling the shares of stock to Defendants, Plaintiffs reasonably relied upon each of the foregoing misrepresentations.

79.     Each of the misrepresentations made by Defendants have caused loss and damage to Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, pre-judgment and post-judgment interest, attorneys fees and costs, and such other relief as this Court may deem just and proper.

## COUNT VIII

### Unjust Enrichment

80.     Paragraphs 1 through 26 are hereby realleged and incorporated for reference as if fully set forth herein.

81.     Plaintiffs conferred a benefit upon Defendants.     Specifically, Plaintiffs transferred the following shares to the Defendants:

a.  CMF – 3,400,000 shares

    b.  Eiger – 2,980,000 shares

    c.  Prism – 3,300,000 shares

    d.  SEO – 3,130,000 shares

    82.    Defendants voluntarily accepted and retained the benefit conferred by Plaintiffs.

    83.    The circumstances are such that it would be inequitable for Defendants to retain the benefit without paying value thereof to Plaintiffs.

    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, pre-judgment and post-judgment interest, attorneys fees and costs, and such other relief as this Court may deem just and proper.


September 20, 2012

Respectfully Submitted,

/s/ Louis M. Ursini, III
LOUIS M. URSINI, III, ESQ.
Florida Bar No. 0355940
PHILLIP J. HARRIS, ESQ.
Florida Bar No.:  004410
ADAMS and REESE, LLP
101 East Kennedy Boulevard,
Suite 4000
Tampa, Florida 33602
Telephone: (813) 402-2880
Facsimile: (813) 227-5636
louis.ursini@arlaw.com
phillip.harris@arlaw.com
Counsel for Plaintiffs

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing and the

accompanying attachments, and the facts stated in said documents are true.

Great China Mania Holdings, Inc.

By: YAU WAI HUNG

Its:

Huang Jian Nan

Tam Kin Pong

Zeng Zhi Jian

Signature Witness

By:Kwong Kwan Yin

## STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT (this "Agreement"), dated as of March 22, 2012, between Huang Jian Nan (the "Seller") and CMF Investments, Inc. (the "Purchaser").

## BACKGROUND

The Seller is the holder of 3,400,000 shares of common stock, $0.01 par value per share, of Great China Mania Holdings, Inc., a Florida corporation (the "Company"), after giving effect to the conversion of a convertible promissory note dated September 1, 2011. The Purchaser desires to purchase from Seller a total of three million four hundred thousand (3,400,000) shares (the "Shares") received upon such conversion, and the Seller desires to sell the Shares to the Purchaser, on the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the premises and of the mutual promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller hereby agree as follows:

## AGREEMENT

1.   <u>Sale of Shares; Purchase Price</u>. Subject to the terms and conditions set forth herein, the Purchaser hereby agrees to purchase the Shares from the Seller, and the Seller agrees to sell such Shares for an aggregate purchase price of thirty thousand dollars ($30,000 USD), or $.0088 per Share (the "Purchase Price").

2.   <u>Closing</u>.

(a)   The closing (the "Closing") shall take place on the date of the execution of this Agreement at such time or place as the parties may agree upon.

(b)   Within ten (10) business days following the Closing, the Seller shall deliver to the Purchaser a certificate or certificates representing the Shares with all necessary stock transfer stamps, if any are required, affixed thereto, accompanied by an executed stock transfer power duly endorsed in blank with signature guaranteed (or such other signed instrument of transfer acceptable to the Company's Transfer Agent) and such other documents as may be necessary to effect the transfer of the respective number of Shares to the Purchaser free and clear of all liens, claims, charges, security interests, and encumbrances of any kind whatsoever.

3.   <u>Representations and Warranties of Seller</u>. The Seller represents and warrants to the Purchaser that:

(a)   The Seller owns the Shares of record and warrants that the Shares were properly issued, fully transferable, exempt from registration and are free and clear of all liens, claims, charges, security interests, and encumbrances of any kind whatsoever. The Seller has sole control over such Shares or sole discretionary authority over any account in which they are

STOCK PURCHASE AGREEMENT

Page 1 of 7



COMPOSITE EXHIBIT "A"

held.

(b)     The Seller is not currently and has not been during the three month period immediately preceding the date of the Agreement an "affiliate" (as such term is defined by Rule 144 as promulgated under the Securities Act of 1933, as amended (the "**Securities Act**")) of the Company. The Seller has not, since acquiring the Shares to be sold by such Seller hereunder, ever granted to any person an option or right to purchase or otherwise acquire such Shares, by contract of sale or otherwise, nor had any "short position in" with respect to such Shares. The Seller has never effected nor attempted to effect any distribution or public offering of such Shares.

(c)     The Seller has full right, power and authority to execute, deliver and perform this Agreement and to carry out the transactions contemplated hereby. This Agreement has been duly and validly executed and delivered by the Seller and constitutes a valid, binding obligation of the Seller, enforceable against the Seller in accordance with its terms (except as such enforceability may be limited by applicable bankruptcy and similar laws affecting the enforcement of creditors' rights generally and to general equitable principals).

(d)     The Seller has, in connection with the transactions contemplated hereby and all aspects thereof, dealt directly with the Purchaser and has no arrangement or understanding with or obligation to any broker (except with respect to ministerial functions, if any) or other intermediary that would result in the payment of a brokerage fee or other similar remuneration by anyone other than the Seller.

4.     <u>Representations and Warranties of the Purchaser</u>. The Purchaser represents and warrants to the Seller that:

(a)     The Purchaser has full right, power and authority to execute, deliver and perform this Agreement and to carry out the transactions contemplated hereby. This Agreement has been duly and validly executed by the Purchaser, constitutes a valid obligation of the Purchaser, is legally binding on it and is enforceable against it in accordance with its terms (except as such enforceability may be limited by applicable bankruptcy and similar laws affecting the enforcement of creditors' rights generally and to general equitable principals).

(b)     The Purchaser is acquiring the Shares being purchased by it for its own accounts (and not for the accounts of others) for passive investment and not with a view to distribute. The Purchaser has no agreement or other arrangement with any person to sell, transfer or pledge any part of the Shares which would guarantee the Purchaser any profit or provide any guarantee to the Purchaser against any loss with respect to the Shares.

(c)     The Purchaser has reviewed copies of such documents and other information as the Purchaser has deemed necessary in order to make an informed investment decision with respect to its purchase of the Shares being acquired and the Purchaser is not relying upon the Seller for the accuracy or completeness of any of the information reviewed by the Purchaser, including all information filed by the Company pursuant to the Securities Act and the

STOCK PURCHASE AGREEMENT

Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

(d)     The Purchaser is an "Accredited Investor" as the term is defined in Rule 501(a) of Regulation D as promulgated under the Securities Act. The Purchaser is a sophisticated investor with sufficient knowledge and experience in financial matters so as to be capable of evaluating and understanding, and has evaluated and understood, the merits and risks of purchasing the Shares being acquired by it. The Purchaser recognizes that investments in the Company involve substantial risks. The Purchaser has taken full cognizance of, and understands, such risks and has obtained sufficient information to evaluate the merits and risks of an investment in the Company and the acquisition of the Shares. The Purchaser is able to bear the substantial economic risks of the Purchaser's investment in the Company and the purchase of securities of the Company in that, among other factors, the Purchaser can afford to hold securities of the Company for an indefinite period and can afford a complete loss of the Purchaser's investment in the Company.

(e)     The Purchaser is relying solely on the Purchaser's own decision or the advice of the Purchaser's own adviser(s) with respect to an investment in the Company and the acquisition of the Shares, and has neither received nor relied on any communication from the Seller or his agents regarding any legal, investment or tax advice relating to an investment in the Company and the acquisition of the Shares. The Purchaser hereby acknowledges that the Seller is not making any representations or warranties with respect to the business, assets, liabilities, operations, condition (financial or otherwise), and prospects of the Company.

5.     Survival. The Seller and the Purchaser covenant that their respective representations and warranties contained herein shall be true in all respects as of the Closing date of the sale of the Shares pursuant to this Agreement. All representations and warranties and other agreements made by the Seller and the Purchaser in this Agreement or pursuant hereto shall survive the Closing date until the first anniversary of the date hereof.

6.     Indemnification.

a.     The Seller hereby agrees to indemnify and hold harmless the Purchaser and its respective agents and attorneys against any and all losses, claims, damages, liabilities and expenses incurred by each such person insofar as such losses, claims, demands, liabilities and expenses arise out of or are based upon any breach of any representation, warranty or agreement made by the Seller in this Agreement; provided, however, in no event shall the maximum aggregate liability of the Seller to the Purchaser pursuant to this Section 6 be in excess of the Purchase Price.

b.     The Seller hereby agrees to indemnify and hold harmless the Company and its respective officers, directors, shareholders, employees, agents and attorneys against any and all losses, claims, damages, liabilities and expenses incurred by each such person insofar as such losses, claims, demands, liabilities and expenses arise out of or are based upon (i) any breach of any representation, warranty or agreement made by the Seller in this Agreement; or (ii) any violation or alleged violation by the Seller of the Securities Act, Exchange Act or any state

STOCK PURCHASE AGREEMENT

securities law or any rule or regulation thereunder, in connection with the performance of his obligations under this Agreement, provided, however, in no event shall the maximum aggregate liability of the Seller to the Company pursuant to this Section 6 be in excess of the Sale Amount.

7.    Additional Action. Each party shall, upon the request of the other, from time to time, execute and deliver promptly to such other party all instruments and documents of further assurances or otherwise and will do any and all such acts and things as may be reasonably required to carry out the obligations of such party hereunder and to consummate the transactions contemplated hereby.

8.    Successors and Assigns. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns. Nothing expressed or referred to in this Agreement will be construed to give any person other than the parties to this Agreement any legal or equitable right, remedy or claim under or with respect to this Agreement or any provision of this Agreement, except such rights as shall inure to a successor or permitted assignee pursuant to hereto.

9.    Governing Law. This Agreement shall in all respects be governed by the laws of the State of New York without giving effect to the principles of conflicts of law thereof. Any dispute with respect to the interpretation of this Agreement or the rights and obligations of the parties shall exclusively be brought in a proceeding in the United States District Court for the Southern District of New York, or if such court does not have subject matter jurisdiction then in the Supreme Court of the State of New York, County of New York. Each of the parties accepts and consents for itself and its property, generally and unconditionally to the exclusive jurisdiction of such courts and waives the right to object to the jurisdiction or venue of either of such courts and waives the right to claim that such courts are inconvenient forums. Each of the parties specifically states that this Agreement and any disputes as to their meaning or the rights and obligations of the parties shall not be subject to arbitration.

10.    Entire Agreement. This Agreement constitutes the entire arrangement between the parties with respect to the Shares and supersedes all prior agreements, whether written or oral, between the parties with respect to is subject matter. The Agreement cannot be changed, modified, discharged or terminated except by a writing signed by the party against whom enforcement of any change, modification, discharge or termination is sought.

11.    Waiver; Remedies Cumulative. The rights and remedies of the parties to this Agreement are cumulative and not alternative. Neither any failure nor any delay by any party in exercising any right, power or privilege under this Agreement or any of the documents referred to in this Agreement will operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. To the maximum extent permitted by applicable law, (a) no claim or right arising out of this Agreement or any of the documents referred to in this Agreement can be discharged by one party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the party with such claim or right; (b) no waiver that may be given by a party will be applicable except in the specific instance for which it is given; and (c) no notice to or demand on one party will be

STOCK PURCHASE AGREEMENT

deemed to be a waiver of any obligation of that party or of the right of the party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the documents referred to in this Agreement.

12. **Assignment.** The Purchaser may at any time assign its rights and obligations under this Agreement to persons or entities affiliated with such Purchaser. The Seller shall be required to honor any such assignment only after receiving notice thereof from such Purchaser.

13. **Notices.** Any notice, demand or other communication to be given hereunder by either party to the other shall be in writing and shall be mailed by certified mail, return receipt requested, or delivered against receipt to the party to whom it is to be given to the address of such party set forth on the signature page hereto (or to such other address as the party shall have furnished in accordance with the provisions of this Section 13). Any notice or other communication given by certified mail shall be deemed given at the time of certification thereof, except for a notice changing a party's address which shall be deemed given at the time of receipt thereof.

14. **Captions.** The captions used in this Agreement are for convenience only and shall not be deemed as, or construed as, a part of this Agreement.

15. **Counterparts; Facsimile Execution.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument. Facsimile execution and delivery of this Agreement is legal, valid and binding for all purposes.

16. **Waiver of Jury Trial.** Each party hereby waives, to the fullest extent permitted by law, any right it may have to a trial by jury in respect to any proceeding directly or indirectly arising out of, under or in connection with this Agreement.

17. **Severability.** If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible to the fullest extent permitted by applicable law in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the extent possible.

18. **Confidentiality.** This Agreement and the terms thereof shall be kept confidential and not disclosed to any person or party (except the respective attorneys of the parties), except as may be required by law.

19. **Advisors.** Since the Seller has not provided the Purchaser with a legal opinion as to the proper issuance, tradeability, transferability and exemption from registration, the Purchaser shall submit this document and all supporting documents to her attorney and will rely upon the Opinion of her attorney. It is expressly understood that Purchaser shall be under no obligation to

STOCK PURCHASE AGREEMENT

perform under any of the terms of this Agreement until such time as her attorney determines that the shares were properly issued, free trading, fully transferable and properly registered or qualify for an exemption from registration.

20.   Expenses. Each party shall be responsible for, and pay, its own expenses incurred in connection with the preparation and negotiation of this Agreement and in connection with its performance hereunder.

IN WITNESS WHEREOF, each of the parties have caused this Stock Purchase Agreement to be executed as of the day and year first above written.

SELLER:

Huang Jian Nan

By:_____
Name:  Huang Jian Nan
Title:   An Individual

Address:
Huang Jian Nan
203 Hankow Center
5-15 Hankow Road
Tsimshatsui
Kowloon, Hong Kong

PURCHASER:

CMF INVESTMENTS, INC.

By:_____
Name:  Carla S. Hohenhouse
Title:  President

Address:

STOCK PURCHASE AGREEMENT

Page 6 of 7

CMF Investments, Inc.
8520 Glenbury Ct. N.
Jacksonville, Fl. 32256

STOCK PURCHASE AGREEMENT

Page 7 of 7

## STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement (this "Agreement") made and entered into as of _____ _____, 2012, by and between the EIGER INVESTMENTS INC (the "Buyer") and Huang Jian Nan (the "Seller").

This Agreement sets forth the terms and conditions upon which the Seller is selling to the Buyer and the Buyer is purchasing from the 2836600 restricted shares (hereinafter referred to as the "Shares") of common stock of Great China Mania Holdings, Inc., a Florida corporation (the "Company").

In consideration of the mutual agreements contained herein, the parties hereby agree as follows:

### I. SALE OF THE SHARES.

1.01    Shares being Sold. Subject to the terms and conditions of this Agreement, the Seller is selling the Shares to the Buyer.

That the Buyer realizes that (i) the purchase of the Shares is a long-term investment; (ii) the purchaser of the Shares must bear the economic risk of investment for an indefinite period of time because the Shares have not been registered under the Securities Act of 1933 ("1933 Act") or under the securities laws of any state and, therefore, the Shares cannot be resold unless they are subsequently registered under said laws or exemptions from such registrations are available; and (iii) the transferability of the Shares is restricted and that a legend may be placed on any certificate representing the securities substantially to the following effect:

**THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE SOLD, TRANSFERRED, ASSIGNED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF A CURRENT AND EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT WITH RESPECT TO SUCH SHARES, OR AN OPINION SATISFACTORY TO THE ISSUER AND ITS COUNSEL TO THE EFFECT THAT REGISTRATION IS NOT REQUIRED UNDER THE ACT.**

1.02    Purchase Price. "The Purchase Price" of the Shares shall be $19290, which shall be delivered to Seller as the Closing (herein later defined).

1.03    Closing. The Closing of the transactions shall take place on date of this Agreement, or at such other date and time as the parties may mutually agree in writing.

1.04    Delivery by the Seller. At the Closing, the Seller shall deliver to Buyer a certificate representing the Shares purchased in the name of the Buyer.

### II. RELATED TRANSACTIONS.

2.01    Finders. The Seller and the Buyer acknowledge, respectively, that there were no finders with respect to the transaction contemplated herein that either is obligated to.

2.02    Other Buyers. The Seller acknowledges that he has not solicited any other buyer to purchase shares of the Company besides the Buyer. By signing this Agreement, the Seller acknowledges that it will not sell any other shares of the Company to any other buyer without first providing twenty (20) days written notice to the Buyer and giving the Buyer an opportunity to purchase any additional shares.

The Seller further acknowledges that there has been no influence exerted over the Seller by any officer or director of the Company regarding the sale of Seller's Shares.

### III. REPRESENTATIONS AND WARRANTIES OF SELLER.

The Seller hereby represents and warrants as follows:

3.01   Organization, Capitalization, etc.  The Company is a corporation duly organized, validly existing, and in good standing under the laws of the State of Florida, and is qualified in no other state.

3.02   Authority; No Violation. The execution and delivery of this Agreement by the Seller, and the consummation of the transactions contemplated hereby have been duly authorized. Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will constitute a violation or default under any term or provision of the Certificate of Incorporation or bylaws of the Seller, or of any contract, commitment, indenture, other agreement or restriction of any kind or character to which the Seller is a party or by which the Seller is bound.

3.03   Disclosure. No representation or warranty by the Seller contained in this Agreement, and no statement contained in any instrument, list, certificate, or writing furnished to the Buyer pursuant to the provisions hereof or in connection with the transaction contemplated hereby, contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein or therein not misleading or necessary in order to provide a prospective purchaser of the business of the Company with proper information as to the Company and its affairs.

3.04   Non-Affiliate.  The Seller is not currently, and has not been for the last 90 days, an officer, director, 10% or more shareholder, or in any other way an affiliate of the Company.  The Seller is not a person or entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with the Company.

### IV. REPRESENTATIONS AND WARRANTIES BY BUYER.

Buyer hereby represents and warrant as follows:

4.01   Authority; No Violation. The execution and delivery of this Agreement by the Buyer and the consummation of the transactions contemplated hereby by Buyer has been duly authorized.  Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will constitute a violation or default under any term or provision of any contract, commitment, indenture, other agreement or restriction of any kind or character to which any of the individual Buyer is a party or by which any of the individual Buyer is bound.

4.02   Representations Regarding the Acquisition of the Shares.

(a)   The Buyer understands the speculative nature and the risks of investments associated with the Company and confirm that it is able to bear the risk of the investment;

(b)   The Buyer has had the opportunity to ask questions of the Seller and receive additional information about the Company, or could acquire it without unreasonable effort or expense necessary to evaluate the merits and risks of any such purchase.  Further, the Buyer has been given an opportunity to question the Seller and receive related documentation to the purchase;

(c)     The Buyer has sufficient knowledge and experience in financial and business matters, and is sufficiently familiar with investments of the type represented by the Shares, including familiarity with previous private and public purchases of speculative and restricted securities, that it is capable of evaluating the merits and risks associated with purchase of the Shares;

(d)     That the Buyer realizes that (i) the purchase of the Shares is a long-term investment; (ii) the purchaser of the Shares must bear the economic risk of investment for an indefinite period of time because the Shares have not been registered under the Securities Act of 1933 ("1933 Act") or under the securities laws of any state and, therefore, the Shares cannot be resold unless they are subsequently registered under said laws or exemptions from such registrations are available; and (iii) the transferability of the Shares is restricted and that a legend may be placed on any certificate representing the securities substantially to the following effect:

THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE SOLD, TRANSFERRED, ASSIGNED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF A CURRENT AND EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT WITH RESPECT TO SUCH SHARES, OR AN OPINION SATISFACTORY TO THE ISSUER AND ITS COUNSEL TO THE EFFECT THAT REGISTRATION IS NOT REQUIRED UNDER THE ACT.

(e)     In evaluating the merits of the purchase of the Shares, Buyer has relied solely on his, her or its own investigation concerning the Company and has not relied upon any representations provided by the Seller;

(f)     The Buyer and its principals has not: (i) been party to any adverse proceeding brought by the SEC or any similar state agency; (ii) any material criminal proceeding regarding the purchase or sale of securities or other crimes, excluding only misdemeanor crimes; or (iii) filed bankruptcy proceedings within the past five years;

(g)     The Buyer is able to pay his, her or its debts as they become due, and the Buyer (i) is not currently insolvent; (ii) has made no general or other assignment for the benefit of creditors; and (iii) is not party to any material proceeding that would have an adverse effect on the Buyer's assets; and

(h)     The funds that the Buyer is utilizing to purchase the Shares being acquired hereunder are lawful funds of the Buyer that were earned or acquired by or paid to the Buyer for lawful purposes.

## V. SURVIVAL OF REPRESENTATIONS; INDEMNIFICATION.

5.01     Survival of Representations. All representations, warranties, and agreements made by any party in this Agreement or pursuant hereto shall survive the execution and delivery hereof and any investigation at any time made by or on behalf of any party.

## VI. ADDITIONAL CONDITIONS TO CLOSING

6.01     Obligation of Buyer to Close. The Buyer shall not be obligated to close this transaction unless it is satisfied, following reasonable investigation, that all of the representations of Seller as of the

date of execution of this Agreement and as of the date of Closing under this Agreement are true and correct in all material respects.

     6.02     <u>Obligation of Seller to Close</u>. The Seller shall not be obligated to close this transaction unless it is satisfied, following reasonable investigation, that all of the representations of the Buyer as of the date of execution of this Agreement and as of the date of Closing under this Agreement are true and correct in all material respects.

## VII. MISCELLANEOUS

     7.01     <u>Expenses</u>. Each of the parties shall bear its own expenses incurred in conjunction with the Closing hereunder.

     7.02     <u>Further Assurances</u>. From time to time, at the request of the Buyer and without further consideration, the Seller shall execute and transfer such documents and take such action as the Buyer may reasonably request in order to effectively consummate the transactions herein contemplated.

     7.03     <u>Parties in Interest</u>. All the terms and provisions of this Agreement shall be binding upon, shall inure to the benefit of, and shall be enforceable by the heirs, beneficiaries, representatives, successors, and assigns of the parties hereto.

     7.04     <u>Prior Agreements; Amendments</u>. This Agreement supersedes all prior agreements and understandings between the parties with respect to the subject matter hereof. This Agreement may be amended only by a written instrument duly executed by the parties hereto or their respective successors or assigns.

     7.05     <u>Headings</u>. The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretations of this Agreement.

     7.06     <u>Confidentiality</u>. Each party hereby agrees that all information provided by the other party and identified as "confidential" will be treated as such, and the receiving party shall not make any use of such information other than with respect to this Agreement. If the Agreement shall be terminated, each party shall return to the other all such confidential information in their possession, or will certify to the other party that all of such confidential information that has not been returned has been destroyed.

     7.07     <u>Notices</u>. All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered or mailed (registered or certified mail, postage prepaid, return receipt requested) to the parties at their address specified on the signature page hereto, with a copy sent as indicated on the signature page.

     7.08     <u>Counterparts</u>. This Agreement may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

     7.09     <u>Applicable Law</u>. This Agreement shall be governed by, and construed in accordance with the laws of the State of Utah in respect of contracts, and the State of Florida, in respect of matters of a corporate nature.

*[Remainder of page intentionally left blank; signature page to follow.]*

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the Buyer, the Seller and the Company on the date first above written.

BUYER:

Name: _Michael Scott_

Title: _Team_

Buyer's Address for Notices:

EIGER INVESTMENTS INC
Hunkins Waterfront Plaza, P.O. Box 557
Charlestown, Nevis, West Indies


SELLER:

Name: Huang Jian Nan

Title: _____

Seller's Address for Notices:

Huang Jian Nan
203 Hankow Center
5-15 Hankow Road
Tsimshatsui
Kowloon, Hong Kong

## STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement (this "Agreement") made and entered into as of _____, 2012, by and between the PRISM CAPITAL INC (the "Buyer") and Zeng Zhi Jian (the "Seller").

This Agreement sets forth the terms and conditions upon which the Seller is selling to the Buyer and the Buyer is purchasing from the 3300000 restricted shares (hereinafter referred to as the "Shares") of common stock of Great China Mania Holdings, Inc., a Florida corporation (the "Company").

In consideration of the mutual agreements contained herein, the parties hereby agree as follows:

### I. SALE OF THE SHARES.

1.01    Shares being Sold. Subject to the terms and conditions of this Agreement, the Seller is selling the Shares to the Buyer.

That the Buyer realizes that (i) the purchase of the Shares is a long-term investment; (ii) the purchaser of the Shares must bear the economic risk of investment for an indefinite period of time because the Shares have not been registered under the Securities Act of 1933 ("1933 Act") or under the securities laws of any state and, therefore, the Shares cannot be resold unless they are subsequently registered under said laws or exemptions from such registrations are available; and (iii) the transferability of the Shares is restricted and that a legend may be placed on any certificate representing the securities substantially to the following effect:

**THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE SOLD, TRANSFERRED, ASSIGNED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF A CURRENT AND EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT WITH RESPECT TO SUCH SHARES, OR AN OPINION SATISFACTORY TO THE ISSUER AND ITS COUNSEL TO THE EFFECT THAT REGISTRATION IS NOT REQUIRED UNDER THE ACT.**

1.02    Purchase Price. "The Purchase Price" of the Shares shall be $19290, which shall be delivered to Seller as the Closing (herein later defined).

1.03    Closing. The Closing of the transactions shall take place on date of this Agreement, or at such other date and time as the parties may mutually agree in writing.

1.04    Delivery by the Seller. At the Closing, the Seller shall deliver to Buyer a certificate representing the Shares purchased in the name of the Buyer.

### II. RELATED TRANSACTIONS.

2.01    Finders. The Seller and the Buyer acknowledge, respectively, that there were no finders with respect to the transaction contemplated herein that either is obligated to.

2.02    Other Buyers. The Seller acknowledges that he has not solicited any other buyer to purchase shares of the Company besides the Buyer. By signing this Agreement, the Seller acknowledges that it will not sell any other shares of the Company to any other buyer without first providing twenty (20) days written notice to the Buyer and giving the Buyer an opportunity to purchase any additional shares.

The Seller further acknowledges that there has been no influence exerted over the Seller by any officer or director of the Company regarding the sale of Seller's Shares.

## III. REPRESENTATIONS AND WARRANTIES OF SELLER.

The Seller hereby represents and warrants as follows:

3.01    Organization, Capitalization, etc.  The Company is a corporation duly organized, validly existing, and in good standing under the laws of the State of Florida, and is qualified in no other state.

3.02    Authority; No Violation. The execution and delivery of this Agreement by the Seller, and the consummation of the transactions contemplated hereby have been duly authorized. Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will constitute a violation or default under any term or provision of the Certificate of Incorporation or bylaws of the Seller, or of any contract, commitment, indenture, other agreement or restriction of any kind or character to which the Seller is a party or by which the Seller is bound.

3.03    Disclosure. No representation or warranty by the Seller contained in this Agreement, and no statement contained in any instrument, list, certificate, or writing furnished to the Buyer pursuant to the provisions hereof or in connection with the transaction contemplated hereby, contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein or therein not misleading or necessary in order to provide a prospective purchaser of the business of the Company with proper information as to the Company and its affairs.

3.04    Non-Affiliate.  The Seller is not currently, and has not been for the last 90 days, an officer, director, 10% or more shareholder, or in any other way an affiliate of the Company. The Seller is not a person or entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with the Company.

## IV. REPRESENTATIONS AND WARRANTIES BY BUYER.

Buyer hereby represents and warrant as follows:

4.01    Authority; No Violation. The execution and delivery of this Agreement by the Buyer and the consummation of the transactions contemplated hereby by Buyer has been duly authorized.  Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will constitute a violation or default under any term or provision of any contract, commitment, indenture, other agreement or restriction of any kind or character to which any of the individual Buyer is a party or by which any of the individual Buyer is bound.

4.02    Representations Regarding the Acquisition of the Shares.

(a)    The Buyer understands the speculative nature and the risks of investments associated with the Company and confirm that it is able to bear the risk of the investment;

(b)    The Buyer has had the opportunity to ask questions of the Seller and receive additional information about the Company, or could acquire it without unreasonable effort or expense necessary to evaluate the merits and risks of any such purchase. Further, the Buyer has been given an opportunity to question the Seller and receive related documentation to the purchase;

(c)     The Buyer has sufficient knowledge and experience in financial and business matters, and is sufficiently familiar with investments of the type represented by the Shares, including familiarity with previous private and public purchases of speculative and restricted securities, that it is capable of evaluating the merits and risks associated with purchase of the Shares;

(d)     That the Buyer realizes that (i) the purchase of the Shares is a long-term investment; (ii) the purchaser of the Shares must bear the economic risk of investment for an indefinite period of time because the Shares have not been registered under the Securities Act of 1933 ("1933 Act") or under the securities laws of any state and, therefore, the Shares cannot be resold unless they are subsequently registered under said laws or exemptions from such registrations are available; and (iii) the transferability of the Shares is restricted and that a legend may be placed on any certificate representing the securities substantially to the following effect:

THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE SOLD, TRANSFERRED, ASSIGNED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF A CURRENT AND EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT WITH RESPECT TO SUCH SHARES, OR AN OPINION SATISFACTORY TO THE ISSUER AND ITS COUNSEL TO THE EFFECT THAT REGISTRATION IS NOT REQUIRED UNDER THE ACT.

(e)     In evaluating the merits of the purchase of the Shares, Buyer has relied solely on his, her or its own investigation concerning the Company and has not relied upon any representations provided by the Seller;

(f)     The Buyer and its principals has not: (i) been party to any adverse proceeding brought by the SEC or any similar state agency; (ii) any material criminal proceeding regarding the purchase or sale of securities or other crimes, excluding only misdemeanor crimes; or (iii) filed bankruptcy proceedings within the past five years;

(g)     The Buyer is able to pay his, her or its debts as they become due, and the Buyer (i) is not currently insolvent; (ii) has made no general or other assignment for the benefit of creditors; and (iii) is not party to any material proceeding that would have an adverse effect on the Buyer's assets; and

(h)     The funds that the Buyer is utilizing to purchase the Shares being acquired hereunder are lawful funds of the Buyer that were earned or acquired by or paid to the Buyer for lawful purposes.

### V. SURVIVAL OF REPRESENTATIONS; INDEMNIFICATION.

5.01     Survival of Representations. All representations, warranties, and agreements made by any party in this Agreement or pursuant hereto shall survive the execution and delivery hereof and any investigation at any time made by or on behalf of any party.

### VI. ADDITIONAL CONDITIONS TO CLOSING

6.01     Obligation of Buyer to Close. The Buyer shall not be obligated to close this transaction unless it is satisfied, following reasonable investigation, that all of the representations of Seller as of the

date of execution of this Agreement and as of the date of Closing under this Agreement are true and correct in all material respects.

6.02    Obligation of Seller to Close.  The Seller shall not be obligated to close this transaction unless it is satisfied, following reasonable investigation, that all of the representations of the Buyer as of the date of execution of this Agreement and as of the date of Closing under this Agreement are true and correct in all material respects.

## VII. MISCELLANEOUS

7.01    Expenses. Each of the parties shall bear its own expenses incurred in conjunction with the Closing hereunder.

7.02    Further Assurances. From time to time, at the request of the Buyer and without further consideration, the Seller shall execute and transfer such documents and take such action as the Buyer may reasonably request in order to effectively consummate the transactions herein contemplated.

7.03    Parties in Interest. All the terms and provisions of this Agreement shall be binding upon, shall inure to the benefit of, and shall be enforceable by the heirs, beneficiaries, representatives, successors, and assigns of the parties hereto.

7.04    Prior Agreements; Amendments. This Agreement supersedes all prior agreements and understandings between the parties with respect to the subject matter hereof. This Agreement may be amended only by a written instrument duly executed by the parties hereto or their respective successors or assigns.

7.05    Headings. The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretations of this Agreement.

7.06    Confidentiality. Each party hereby agrees that all information provided by the other party and identified as "confidential" will be treated as such, and the receiving party shall not make any use of such information other than with respect to this Agreement. If the Agreement shall be terminated, each party shall return to the other all such confidential information in their possession, or will certify to the other party that all of such confidential information that has not been returned has been destroyed.

7.07    Notices. All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered or mailed (registered or certified mail, postage prepaid, return receipt requested) to the parties at their address specified on the signature page hereto, with a copy sent as indicated on the signature page.

7.08    Counterparts. This Agreement may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7.09    Applicable Law. This Agreement shall be governed by, and construed in accordance with the laws of the State of Utah in respect of contracts, and the State of Florida, in respect of matters of a corporate nature.

*[Remainder of page intentionally left blank; signature page to follow.]*

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the Buyer, the Seller and the Company on the date first above written.

BUYER:

Name: _Michael  Scott_

Title: _TEAM_

Buyer's Address for Notices:

**PRISM CAPITAL INC**
Suite 307, Griffin Corporate Center, P.O. Box 1512 Beachmont Kingstown, St. Vincent, West Indies

SELLER:

Name: Zeng Zhi Jian

Title: _____

Seller's Address for Notices:

Zeng Zhi Jian
203 Hankow Center
5-15 Hankow Road
Tsimshatsui
Kowloon, Hong Kong

## STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement (this "Agreement") made and entered into as of _____, 2012, by and between the SEO GROUP CONSULTANTS INC (the "Buyer") and Tam Kin Pong (the "Seller").

This Agreement sets forth the terms and conditions upon which the Seller is selling to the Buyer and the Buyer is purchasing from the 3130000 restricted shares (hereinafter referred to as the "Shares") of common stock of Great China Mania Holdings, Inc., a Florida corporation (the "Company").

In consideration of the mutual agreements contained herein, the parties hereby agree as follows:

### I. SALE OF THE SHARES.

1.01     Shares being Sold. Subject to the terms and conditions of this Agreement, the Seller is selling the Shares to the Buyer.

That the Buyer realizes that (i) the purchase of the Shares is a long-term investment; (ii) the purchaser of the Shares must bear the economic risk of investment for an indefinite period of time because the Shares have not been registered under the Securities Act of 1933 ("1933 Act") or under the securities laws of any state and, therefore, the Shares cannot be resold unless they are subsequently registered under said laws or exemptions from such registrations are available; and (iii) the transferability of the Shares is restricted and that a legend may be placed on any certificate representing the securities substantially to the following effect:

**THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE SOLD, TRANSFERRED, ASSIGNED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF A CURRENT AND EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT WITH RESPECT TO SUCH SHARES, OR AN OPINION SATISFACTORY TO THE ISSUER AND ITS COUNSEL TO THE EFFECT THAT REGISTRATION IS NOT REQUIRED UNDER THE ACT.**

1.02     Purchase Price. "The Purchase Price" of the Shares shall be $19290, which shall be delivered to Seller as the Closing (herein later defined).

1.03     Closing. The Closing of the transactions shall take place on date of this Agreement, or at such other date and time as the parties may mutually agree in writing.

1.04     Delivery by the Seller. At the Closing, the Seller shall deliver to Buyer a certificate representing the Shares purchased in the name of the Buyer.

### II. RELATED TRANSACTIONS.

2.01     Finders. The Seller and the Buyer acknowledge, respectively, that there were no finders with respect to the transaction contemplated herein that either is obligated to.

2.02     Other Buyers. The Seller acknowledges that he has not solicited any other buyer to purchase shares of the Company besides the Buyer. By signing this Agreement, the Seller acknowledges that it will not sell any other shares of the Company to any other buyer without first providing twenty (20) days written notice to the Buyer and giving the Buyer an opportunity to purchase any additional shares.

The Seller further acknowledges that there has been no influence exerted over the Seller by any officer or director of the Company regarding the sale of Seller's Shares.

### III. REPRESENTATIONS AND WARRANTIES OF SELLER.

The Seller hereby represents and warrants as follows:

3.01    Organization, Capitalization, etc.  The Company is a corporation duly organized, validly existing, and in good standing under the laws of the State of Florida, and is qualified in no other state.

3.02    Authority; No Violation. The execution and delivery of this Agreement by the Seller, and the consummation of the transactions contemplated hereby have been duly authorized. Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will constitute a violation or default under any term or provision of the Certificate of Incorporation or bylaws of the Seller, or of any contract, commitment, indenture, other agreement or restriction of any kind or character to which the Seller is a party or by which the Seller is bound.

3.03    Disclosure. No representation or warranty by the Seller contained in this Agreement, and no statement contained in any instrument, list, certificate, or writing furnished to the Buyer pursuant to the provisions hereof or in connection with the transaction contemplated hereby, contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein or therein not misleading or necessary in order to provide a prospective purchaser of the business of the Company with proper information as to the Company and its affairs.

3.04    Non-Affiliate.  The Seller is not currently, and has not been for the last 90 days, an officer, director, 10% or more shareholder, or in any other way an affiliate of the Company. The Seller is not a person or entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with the Company.

### IV. REPRESENTATIONS AND WARRANTIES BY BUYER.

Buyer hereby represents and warrant as follows:

4.01    Authority; No Violation. The execution and delivery of this Agreement by the Buyer and the consummation of the transactions contemplated hereby by Buyer has been duly authorized.  Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will constitute a violation or default under any term or provision of any contract, commitment, indenture, other agreement or restriction of any kind or character to which any of the individual Buyer is a party or by which any of the individual Buyer is bound.

4.02    Representations Regarding the Acquisition of the Shares.

(a)    The Buyer understands the speculative nature and the risks of investments associated with the Company and confirm that it is able to bear the risk of the investment;

(b)    The Buyer has had the opportunity to ask questions of the Seller and receive additional information about the Company, or could acquire it without unreasonable effort or expense necessary to evaluate the merits and risks of any such purchase. Further, the Buyer has been given an opportunity to question the Seller and receive related documentation to the purchase;

(c)     The Buyer has sufficient knowledge and experience in financial and business matters, and is sufficiently familiar with investments of the type represented by the Shares, including familiarity with previous private and public purchases of speculative and restricted securities, that it is capable of evaluating the merits and risks associated with purchase of the Shares;

(d)     That the Buyer realizes that (i) the purchase of the Shares is a long-term investment; (ii) the purchaser of the Shares must bear the economic risk of investment for an indefinite period of time because the Shares have not been registered under the Securities Act of 1933 ("1933 Act") or under the securities laws of any state and, therefore, the Shares cannot be resold unless they are subsequently registered under said laws or exemptions from such registrations are available; and (iii) the transferability of the Shares is restricted and that a legend may be placed on any certificate representing the securities substantially to the following effect:

THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE SOLD, TRANSFERRED, ASSIGNED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF A CURRENT AND EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT WITH RESPECT TO SUCH SHARES, OR AN OPINION SATISFACTORY TO THE ISSUER AND ITS COUNSEL TO THE EFFECT THAT REGISTRATION IS NOT REQUIRED UNDER THE ACT.

(e)     In evaluating the merits of the purchase of the Shares, Buyer has relied solely on his, her or its own investigation concerning the Company and has not relied upon any representations provided by the Seller;

(f)     The Buyer and its principals has not: (i) been party to any adverse proceeding brought by the SEC or any similar state agency; (ii) any material criminal proceeding regarding the purchase or sale of securities or other crimes, excluding only misdemeanor crimes; or (iii) filed bankruptcy proceedings within the past five years;

(g)     The Buyer is able to pay his, her or its debts as they become due, and the Buyer (i) is not currently insolvent; (ii) has made no general or other assignment for the benefit of creditors; and (iii) is not party to any material proceeding that would have an adverse effect on the Buyer's assets; and

(h)     The funds that the Buyer is utilizing to purchase the Shares being acquired hereunder are lawful funds of the Buyer that were earned or acquired by or paid to the Buyer for lawful purposes.

## V. SURVIVAL OF REPRESENTATIONS; INDEMNIFICATION.

5.01     Survival of Representations. All representations, warranties, and agreements made by any party in this Agreement or pursuant hereto shall survive the execution and delivery hereof and any investigation at any time made by or on behalf of any party.

## VI. ADDITIONAL CONDITIONS TO CLOSING

6.01     Obligation of Buyer to Close. The Buyer shall not be obligated to close this transaction unless it is satisfied, following reasonable investigation, that all of the representations of Seller as of the

date of execution of this Agreement and as of the date of Closing under this Agreement are true and correct in all material respects.

6.02     Obligation of Seller to Close. The Seller shall not be obligated to close this transaction unless it is satisfied, following reasonable investigation, that all of the representations of the Buyer as of the date of execution of this Agreement and as of the date of Closing under this Agreement are true and correct in all material respects.

## VII. MISCELLANEOUS

7.01     Expenses. Each of the parties shall bear its own expenses incurred in conjunction with the Closing hereunder.

7.02     Further Assurances. From time to time, at the request of the Buyer and without further consideration, the Seller shall execute and transfer such documents and take such action as the Buyer may reasonably request in order to effectively consummate the transactions herein contemplated.

7.03     Parties in Interest. All the terms and provisions of this Agreement shall be binding upon, shall inure to the benefit of, and shall be enforceable by the heirs, beneficiaries, representatives, successors, and assigns of the parties hereto.

7.04     Prior Agreements; Amendments. This Agreement supersedes all prior agreements and understandings between the parties with respect to the subject matter hereof. This Agreement may be amended only by a written instrument duly executed by the parties hereto or their respective successors or assigns.

7.05     Headings. The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretations of this Agreement.

7.06     Confidentiality. Each party hereby agrees that all information provided by the other party and identified as "confidential" will be treated as such, and the receiving party shall not make any use of such information other than with respect to this Agreement. If the Agreement shall be terminated, each party shall return to the other all such confidential information in their possession, or will certify to the other party that all of such confidential information that has not been returned has been destroyed.

7.07     Notices. All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered or mailed (registered or certified mail, postage prepaid, return receipt requested) to the parties at their address specified on the signature page hereto, with a copy sent as indicated on the signature page.

7.08     Counterparts. This Agreement may be executed simultaneously in several counterparts. each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7.09     Applicable Law. This Agreement shall be governed by, and construed in accordance with the laws of the State of Utah in respect of contracts, and the State of Florida, in respect of matters of a corporate nature.

*[Remainder of page intentionally left blank; signature page to follow.]*

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the Buyer, the Seller and the Company on the date first above written.

BUYER:

Name: _Michael Scott_

Title: _Team_

Buyer's Address for Notices:

SEO GROUP CONSULTANTS INC
7 New Road, Second Floor,
#6 Belize City, Belize

SELLER:

Name: Tam Kin Pong

Title: _____

Seller's Address for Notices:

Tam Kin Pong
203 Hankow Center
5-15 Hankow Road
Tsimshatsui
Kowloon, Hong Kong



THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. THE SHARES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT WITH RESPECT TO THE SHARES OR THE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF SAID ACT THAT IS THEN APPLICABLE TO THE SHARES, AS TO WHICH A PRIOR OPINION OF COUNSEL MAY BE REQUIRED BY THE ISSUER OR THE TRANSFER AGENT.

# Great China
# Mania Holdings, Inc.

1298

CERTIFICATE NUMBER

INCORPORATED UNDER THE LAWS OF THE STATE OF FLORIDA

·3,400,000·

SHARES
CUSIP NO. 39030A109

PAR VALUE $0.001
COMMON STOCK

CANCELLED

HUANG JIAN NAN

THIS CERTIFIES THAT

IS THE OWNER OF

·THREE MILLION FOUR HUNDRED THOUSAND·

FULLY PAID AND NON-ASSESSABLE SHARES OF THE COMMON STOCK PAR VALUE OF $0.001 EACH OF

# Great China Mania Holdings, Inc.

TRANSFERABLE ON THE BOOKS OF THE CORPORATION IN PERSON OR BY DULY AUTHORIZED ATTORNEY UPON SURRENDER OF THIS CERTIFICATE PROPERLY ENDORSED. THIS CERTIFICATE IS NOT VALID UNTIL COUNTERSIGNED BY THE TRANSFER AGENT AND REGISTERED BY THE REGISTRAR. WITNESS THE FACSIMILE SEAL OF THE CORPORATION AND THE FACSIMILE SIGNATURES OF ITS DULY AUTHORIZED OFFICERS.

DATED: 03/20/2012

COUNTERSIGNED AND REGISTERED:

ISLAND STOCK TRANSFER
Transfer Agent

By

You Wai Hung
President

Kwong Kwan Yin Roy
Secretary

Great China Mania Holdings, Inc.
Corporate
Seal
FLORIDA

Authorized Signature

100 Second Avenue South, Suite 705S, St. Petersburg, FL, 33701
727.289.0010

1298

39030A109          GREAT CHINA MANIA HOLDINGS INC.          REST - RESTRICTED



THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE SOLD, TRANSFERRED, ASSIGNED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF A CURRENT AND EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT WITH RESPECT TO SUCH SHARES, OR AN OPINION SATISFACTORY TO THE ISSUER AND ITS COUNSEL TO THE EFFECT THAT REGISTRATION IS NOT REQUIRED UNDER THE ACT.

# Great China
# Mania Holdings, Inc.

INCORPORATED UNDER THE LAWS OF THE STATE OF FLORIDA

1294

CERTIFICATE NUMBER

*2,980,000*

SHARES
CUSIP NO.  39030A109

PAR VALUE $0.001
COMMON STOCK

EIGER INVESTMENTS INC.

THIS CERTIFIES THAT

IS THE OWNER OF                    *TWO MILLION NINE HUNDRED EIGHTY THOUSAND*

FULLY PAID AND NON-ASSESSABLE SHARES OF THE COMMON STOCK PAR VALUE OF $0.001 EACH OF

## Great China Mania Holdings, Inc.

TRANSFERABLE ON THE BOOKS OF THE CORPORATION IN PERSON OR BY DULY AUTHORIZED ATTORNEY UPON SURRENDER OF THIS CERTIFICATE PROPERLY ENDORSED. THIS CERTIFICATE IS NOT VALID UNTIL COUNTERSIGNED BY THE TRANSFER AGENT AND REGISTERED BY THE REGISTRAR. WITNESS THE FACSIMILE SEAL OF THE CORPORATION AND THE FACSIMILE SIGNATURES OF ITS DULY AUTHORIZED OFFICERS.

You Wai Hung
President

Kwong Kwan Yin Roy
Secretary

DATED:  02/02/2012

COUNTERSIGNED AND REGISTERED:

ISLAND STOCK TRANSFER
Transfer Agent

By

Authorized Signature

100 Second Avenue South, Suite 705S, St. Petersburg, FL, 33701
727.289.0010

Great China Mania Holdings, Inc.
Corporate
Seal
FLORIDA

1294

15468      GREAT CHINA MANIA HOLDINGS INC      REST - RESTRICTED





THIS SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT"). THE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT AND MAY NOT BE SOLD, TRANSFERRED, ASSIGNED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF A CURRENT AND EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT WITH RESPECT TO SUCH SHARES, OR AN OPINION SATISFACTORY TO THE ISSUER AND ITS COUNSEL TO THE EFFECT THAT REGISTRATION IS NOT REQUIRED UNDER THE ACT.

# Great China
# Mania Holdings, Inc.

INCORPORATED UNDER THE LAWS OF THE STATE OF FLORIDA

1292

CERTIFICATE NUMBER

·3,130,000·

SHARES

CUSIP NO. 39030A109

PAR VALUE $0.001
COMMON STOCK

SEO GROUP CONSULTANTS INC.

THIS CERTIFIES THAT

Is The Owner Of

*THREE MILLION ONE HUNDRED THIRTY THOUSAND*

FULLY PAID AND NON-ASSESSABLE SHARES OF THE COMMON STOCK PAR VALUE OF $0.001 EACH OF

## Great China Mania Holdings, Inc.

TRANSFERABLE ON THE BOOKS OF THE CORPORATION IN PERSON OR BY DULY AUTHORIZED ATTORNEY UPON SURRENDER OF THIS CERTIFICATE PROPERLY ENDORSED. THIS CERTIFICATE IS NOT VALID UNTIL COUNTERSIGNED BY THE TRANSFER AGENT AND REGISTERED BY THE REGISTRAR. WITNESS THE FACSIMILE SEAL OF THE CORPORATION AND THE FACSIMILE SIGNATURES OF ITS DULY AUTHORIZED OFFICERS.

DATED: 02/02/2012

COUNTERSIGNED AND REGISTERED:

ISLAND STOCK TRANSFER
Transfer Agent

By

Authorized Signature

100 Second Avenue South, Suite 705S, St. Petersburg, FL, 33701
727.289.0010

You Wai Hung
President

Kwong Kwan Yin Roy
Secretary

Great China Mania Holdings, Inc.
Corporate
Seal
FLORIDA

1292

D1102   GREAT CHINA MANIA HOLDINGS INC.   REST - RESTRICTED

175 S. Main Street, 15th Floor
Salt Lake City, UT 84111

PHONE 801.303.5730
FAX 801.355.5005



August 24, 2012

CMF Investments Inc.
8520 Glenbury Ct. N
Jacksonville, FL 32256

Re:     Request to Return Shares

Dear CMF Investments Inc.

This firm represents Great China Mania Holdings, Inc. (the "Company"). The purpose of this letter is to demand that you return a total of 3,400,000 shares of common stock (the "Shares") of the Company issued to you on March 26, 2012, in connection with a Stock Purchase Agreement dated March 22, 2012 (the "Agreement"). Under the Agreement you were required to provide the outlined consideration to the Company, which you have failed to do. Thus, the contract had no consideration and is therefore invalid.

Thus, you are hereby notified that you have five (5) calendar days from the date of this notice to return the Shares. Unless we are contacted and the Shares are returned, within the five day period, the Company may file a civil action against you for recompense, plus any court costs and reasonable attorney fees incurred by the Company in taking the action, plus any additional compensation that is equitable and just. The Company is taking this matter very seriously and has instructed us to pursue its rights under the law aggressively.

The Shares may be sent to the following address:

Great China Mania Holdings, Inc.
c/o Vincent & Rees, LC
175 S. Main Street, 15th Floor
Salt Lake City, UT 84111

If you choose to return the Shares, the following must also be provided to send to the Company's transfer agent in connection with the cancellation:

1) A Medallion Signature Guarantee on the back of the Certificate;
2) An Instruction Letter on your letterhead stating what is being returned and the reason that you are returning the shares.

1



EXHIBIT
tabbies
"B"

Should you have any questions regarding this matter you may contact Callie Jones by telephone at (801) 303 – 5730.  Again, if you fail to comply with the demands herein, we will have no choice but to take legal action against you for unjust enrichment and other damages described above.

Sincerely,

VINCENT & REES, L.C.

David Rees, Esq.

cc:     Yau Wai Hung, CEO
        Great China Mania Holdings, Inc.

2

175 S. Main Street, 15th Floor       PHONE 801.303.5730
Salt Lake City, UT 84111             FAX 801.355.5005



August 24, 2012

PRISM CAPITAL INC.
Suite 307, Griffin Corporate Center
PO Box 1512
Beachmont Kingstown
St. Vincent West Indies

Re:    Request to Return Shares

Dear PRISM CAPITAL, INC.

This firm represents Great China Mania Holdings, Inc. (the "Company"). The purpose of this letter is to demand that you return a total of 3,300,000 shares of common stock (the "Shares") of the Company issued to you on February 2, 2012, in connection with a Stock Purchase Agreement dated February 2, 2012 (the "Agreement"). Under the Agreement you were required to provide the outlined consideration to the Company, which you have failed to do. Thus, the contract had no consideration and is therefore invalid.

Thus, you are hereby notified that you have five (5) calendar days from the date of this notice to return the Shares, Unless we are contacted and the Shares are returned, within the five day period, the Company may file a civil action against you for recompense, plus any court costs and reasonable attorney fees incurred by the Company in taking the action, plus any additional compensation that is equitable and just. The Company is taking this matter very seriously and has instructed us to pursue its rights under the law aggressively.

The Shares may be sent to the following address:

Great China Mania Holdings, Inc.
c/o Vincent & Rees, LC
175 S. Main Street, 15th Floor
Salt Lake City, UT 84111

If you choose to return the Shares, the following must also be provided to send to the Company's transfer agent in connection with the cancellation:

1) A Medallion Signature Guarantee on the back of the Certificate;
2) An Instruction Letter on your letterhead stating what is being returned and the reason that you are returning the shares.

1

Should you have any questions regarding this matter you may contact Callie Jones by telephone at (801) 303 – 5730.  Again, if you fail to comply with the demands herein, we will have no choice but to take legal action against you for unjust enrichment and other damages described above.

Sincerely,

VINCENT & REES, L.C.

David Rees, Esq.

cc:   Yau Wai Hung, CEO
       Great China Mania Holdings, Inc.

2

175 S. Main Street, 15th Floor    PHONE 801.303.5730
Salt Lake City, UT 84111    FAX 801.355.5005



August 24, 2012

EIGER INVESTMENTS
Hunkins Waterfront Plaza
P.O. Box 557
Charlestown, Nevis, West Indies

Re:   Request to Return Shares

Dear EIGER INVESTMENTS,

This firm represents Great China Mania Holdings, Inc. (the "Company").  The purpose of this letter is to demand that you return a total of 2,980,000 shares of common stock (the "Shares") of the Company issued to you on February 2, 2012 and March 9, 2012, in connection with a Stock Purchase Agreement dated February 2, 2012 (the "Agreement"). Under the Agreement you were required to provide the outlined consideration to the Company, which you have failed to do. Thus, the contract had no consideration and is therefore invalid.

Thus, you are hereby notified that you have five (5) calendar days from the date of this notice to return the Shares, Unless we are contacted and the Shares are returned, within the five day period, the Company may file a civil action against you for recompense, plus any court costs and reasonable attorney fees incurred by the Company in taking the action, plus any additional compensation that is equitable and just. The Company is taking this matter very seriously and has instructed us to pursue its rights under the law aggressively.

The Shares may be sent to the following address:

Great China Mania Holdings, Inc.
c/o Vincent & Rees, LC
175 S. Main Street, 15th Floor
Salt Lake City, UT  84111

If you choose to return the Shares, the following must also be provided to send to the Company's transfer agent in connection with the cancellation:

1) A Medallion Signature Guarantee on the back of the Certificate;
2) An Instruction Letter on your letterhead stating what is being returned and the reason that you are returning the shares.

1

Should you have any questions regarding this matter you may contact Cailie Jones by telephone at (801) 303 – 5730.  Again, if you fail to comply with the demands herein, we will have no choice but to take legal action against you for unjust enrichment and other damages described above.

Sincerely,

VINCENT & REES, L.C.

David Rees, Esq.

cc:     Yau Wai Hung, CEO
        Great China Mania Holdings, Inc.

2

175 S. Main Street, 15th Floor     PHONE 801.303.5730
Salt Lake City, UT 84111     FAX 801.355.5005



August 24, 2012

SEO GROUP CONSULTANTS, INC.
7 New Road, Second Floor
#6 Belize City, Belize

Re:     Request to Return Shares

Dear SEO GROUP CONSULTANTS, INC.

This firm represents Great China Mania Holdings, Inc. (the "Company"). The purpose of this letter is to demand that you return a total of 3,130,000 shares of common stock (the "Shares") of the Company issued to you on February 2, 2012, in connection with a Stock Purchase Agreement dated February 2, 2012 (the "Agreement"). Under the Agreement you were required to provide the outlined consideration to the Company, which you have failed to do. Thus, the contract had no consideration and is therefore invalid.

Thus, you are hereby notified that you have five (5) calendar days from the date of this notice to return the Shares, Unless we are contacted and the Shares are returned, within the five day period, the Company may file a civil action against you for recompense, plus any court costs and reasonable attorney fees incurred by the Company in taking the action, plus any additional compensation that is equitable and just. The Company is taking this matter very seriously and has instructed us to pursue its rights under the law aggressively.

The Shares may be sent to the following address:

Great China Mania Holdings, Inc.
c/o Vincent & Rees, LC
175 S. Main Street, 15th Floor
Salt Lake City, UT 84111

If you choose to return the Shares, the following must also be provided to send to the Company's transfer agent in connection with the cancellation:

1) A Medallion Signature Guarantee on the back of the Certificate;
2) An Instruction Letter on your letterhead stating what is being returned and the reason that you are returning the shares.

1

Should you have any questions regarding this matter you may contact Callie Jones by telephone at (801) 303 – 5730.  Again, if you fail to comply with the demands herein, we will have no choice but to take legal action against you for unjust enrichment and other damages described above.

Sincerely,

VINCENT & REES, L.C.

David Rees, Esq.


cc:   Yau Wai Hung, CEO
      Great China Mania Holdings, Inc.

2

175 S. Main Street, 15th Floor
Salt Lake City, UT 84111

801.303.5730
801.355.5005



September 18, 2012

Apex Clearing Corp.
Attn: Legal Department
1700 Pacific Ave., Suite 1400
Dallas, TX 75201

Re:    Dispute Regarding Deposited Shares

VIA FAX (888) 268-6916 (2 Pages Total)

Dear Apex Clearing Corp.,

This firm represents Great China Mania Holdings, Inc. (the "Company"). The purpose of this letter is to inform you are acting as the broker and/or clearing firm of certain shares that are currently subject to a dispute (the "Disputed Shares"). It is our position that the following shareholders obtained the Disputed Shares of the Company by fraudulent means, and that there was no consideration given for the Disputed Shares at issue. Accordingly, we request that you immediately cease trading the Disputed Shares as the broker and/or clearing firm.

The Disputed Shares consist of the following (although they may have been deposited through a principal or beneficial owner) and not held in these exact names:

SEO GROUP CONSULTANTS, INC
7 New Road, Second Floor
#6 Belize City, Belize
3,130,000 shares

PRISM CAPITAL INC.
Suite 307, Griffin Corporate Center
PO Box 1512
Beachmont Kingstown
St. Vincent West Indies
3,300,000 shares

EIGER INVESTMENTS
Hunkins Waterfront Plaza
P.O. Box 557
Charlestown, Nevis, West Indies
2,980,000 shares

CMF Investments Inc.
8520 Glenbury Ct. N
Jacksonville, FL  32256
3,400,000 shares



EXHIBIT
"C"

Thank you for your compliance. Please contact me with any questions or concerns.

Sincerely,

David M. Rees

TX Result Report

P  1
09/19/2012 01:51
Serial No.  A1DN011002861
TC:       7430

| Addressee | Start Time | Time | Prints | Result | Note |
|---|---|---|---|---|---|
| 18882686916 | 09-19 01:50 | 00:01:00 | 002/002 | OK | |

Note   TVR: Timer TX, POL: Polling, ORG: Original Size Setting, FWE: Frame Erase TX,
       MAX: Mixed Original Binding Left, CPL: Manual SP, CARL: CARL, FWD: Forward, PCL: PC-FAX,
       BND: Double-Sided Binding Direction, SP: Special Original, FORML: 2-Sided, RTX: Re-TX,
       RLY: Relay, RST: Confidential, BUL: Bulletin, BTP: ITU Fax, IFAX: IP Address Fax,
       I-FAX: Internet Fax

Result  OK: Communication OK, S-OK: Stop Communication, PW-OFF: Power Switch OFF,
        TEL: RX from TEL, NG: Other Error, Cont: Continue, No Ans: No Answer,
        Refuse: Receipt Refused, Busy: Busy, M-Full:Memory Full,
        LOVR:Receiving length Over, POVR:Receiving page Over, FIL:File Error,
        DC:Decode Error, MDN:MDN Response Error, DSN:DSN Response Error.

---

175 S. Main Street, 15th Floor
Salt Lake City, UT 84111

801.303.3730
801.355.5008

September 18, 2012

Apex Clearing Corp.
Attn: Legal Department
1700 Pacific Ave., Suite 1400
Dallas, TX 75201

Re:   Dispute Regarding Deposited Shares

VIA FAX (888) 268-6916 (2 Pages Total)

Dear Apex Clearing Corp.,

This firm represents Great China Mania Holdings, Inc. (the "Company"). The purpose of this letter is to inform you are acting as the broker and/or clearing firm of certain shares that are currently subject to a dispute (the "Disputed Shares"). It is our position that the following shareholders obtained the Disputed Shares of the Company by fraudulent means, and that there was no consideration given for the Disputed Shares at issue. Accordingly, we request that you immediately cease trading the Disputed Shares as the broker and/or clearing firm.

The Disputed Shares consist of the following (although they may have been deposited through a principal or beneficial owner) and not held in these exact names:

SSO GROUP CONSULTANTS, INC
7 New Road, Second Floor
#6 Belize City, Belize
3,130,000 shares

PRISM CAPITAL INC.
Suite 307, Griffin Corporate Center
PO Box 1512
Beachmont Kingstown
St. Vincent West Indies
3,300,000 shares

EIGER INVESTMENTS
Hunkins Waterfront Plaza
P.O. Box 557
Charlestown, Nevis, West Indies
2,980,000 shares

CMP Investments Inc.
8520 Glenbury Ct. N
Jacksonville, FL 32256
3,400,000 shares

175 S. Main Street, 15th Floor        801.303.5730
Salt Lake City, UT 84111             801.355.5005



September 5, 2012

Alpine Securities
Attn: Legal Department
440 East 400 South
Salt Lake City, Utah 84111

Re:     Dispute Regarding Deposited Shares

Dear Alpine Securities,

This firm represents Great China Mania Holdings, Inc. (the "Company"). The purpose of this letter is to inform you are acting as the broker and/or clearing firm of certain shares that are currently subject to a dispute (the "Disputed Shares"). It is our position that the following shareholders obtained the Disputed Shares of the Company by fraudulent means, and that there was no consideration given for the Disputed Shares at issue. Accordingly, we request that you immediately cease trading the Disputed Shares as the broker and/or clearing firm.

The Disputed Shares consist of the following (although they may have been deposited through a principal or beneficial owner) and not held in these exact names:

SEO GROUP CONSULTANTS, INC
7 New Road, Second Floor
#6 Belize City, Belize
3,130,000 shares

PRISM CAPITAL INC.
Suite 307, Griffin Corporate Center
PO Box 1512
Beachmont Kingstown
St. Vincent West Indies
3,300,000 shares

EIGER INVESTMENTS
Hunkins Waterfront Plaza
P.O. Box 557
Charlestown, Nevis, West Indies
2,980,000 shares

CMF Investments Inc.
8520 Glenbury Ct. N
Jacksonville, FL 32256
3,400,000 shares

Thank you for your compliance. Please contact me with any questions or concerns.

Sincerely,

David M. Rees

.75 S. Main Street, 15th Floor     801.303.5730
Salt Lake City, UT 84111     801.355.5005



September 5, 2012

Titan International Securities, Inc.
Attn: Legal Department
Suite 403, The Matalon, Coney Drive
P.O. Box 2135, Belize City, Belize

Re:    Dispute Regarding Deposited Shares

Dear Titan,

This firm represents Great China Mania Holdings, Inc. (the "Company"). The purpose of this letter is to inform you are acting as the broker, shareholder and/or clearing firm of certain shares that are currently subject to a dispute (the "Disputed Shares"). It is our position that the following shareholders obtained the Disputed Shares of the Company by fraudulent means, and that there was no consideration given for the Disputed Shares at issue. Accordingly, we request that you immediately cease trading the Disputed Shares as the broker and/or clearing firm.

The Disputed Shares consist of the following (although they may have been deposited through a principal or beneficial owner) and not held in these exact names:

SEO GROUP CONSULTANTS, INC
7 New Road, Second Floor
#6 Belize City, Belize
3,130,000 shares

PRISM CAPITAL INC.
Suite 307, Griffin Corporate Center
PO Box 1512
Beachmont Kingstown
St. Vincent West Indies
3,300,000 shares

EIGER INVESTMENTS
Hunkins Waterfront Plaza
P.O. Box 557
Charlestown, Nevis, West Indies
2,980,000 shares

CMF Investments Inc.
8520 Glenbury Ct. N
Jacksonville, FL 32256
3,400,000 shares

Thank you for your compliance. Please contact me with any questions or concerns.

Sincerely,

David M. Rees

175 S. Main Street, 15th Floor          301.303.5730
Salt Lake City, UT 84111               801.355.5005



September 5, 2012

Legacy Global Markets, S.A.
2nd Floor, Caye Bank Bldg.
Coconut Drive, San Pedro
Ambergris Caye

Re:     Dispute Regarding Deposited Shares

Dear Legacy,

This firm represents Great China Mania Holdings, Inc. (the "Company"). The purpose of this letter is to inform you are acting as the broker, shareholder and/or clearing firm of certain shares that are currently subject to a dispute (the "Disputed Shares"). It is our position that the following shareholders obtained the Disputed Shares of the Company by fraudulent means, and that there was no consideration given for the Disputed Shares at issue. Accordingly, we request that you immediately cease trading the Disputed Shares as the broker and/or clearing firm.

The Disputed Shares consist of the following (although they may have been deposited through a principal or beneficial owner) and not held in these exact names:

SEO GROUP CONSULTANTS, INC
7 New Road, Second Floor
#6 Belize City, Belize
3,130,000 shares

PRISM CAPITAL INC.
Suite 307, Griffin Corporate Center
PO Box 1512
Beachmont Kingstown
St. Vincent West Indies
3,300,000 shares

EIGER INVESTMENTS
Hunkins Waterfront Plaza
P.O. Box 557
Charlestown, Nevis, West Indies
2,980,000 shares

CMF Investments Inc.
8520 Glenbury Ct. N
Jacksonville, FL 32256
3,400,000 shares

Thank you for your compliance. Please contact me with any questions or concerns.

Sincerely,

David M. Rees

175 S. Main Street, 15th Floor
Salt Lake City, UT 84111

801.303.5730
801.355.5005



September 5, 2012

CMF Investments

To: Agents and Principals of CMF Investments;

Pursuant to discussions and our good faith attempt to resolve this issue we agreed to wait until September 5th to either return the shares to our client or make a payment in trust as recompense. That time has now expired and neither the shares nor any payment has come forth on behalf of our client. In fact, we find it particularly egregious and repugnant that our good faith attempt resulted in yet another fraudulent scheme with the creation of fake bank documents. You leave us no choice but to terminate all attempts to resolve this matter through discussion and to further abandon any hope of witnessing honest efforts from your offices leading to a positive resolution. We are therefore proceeding with our best efforts to pursue legal proceedings at the fullest extent allowable under law. You are strongly advised to conduct yourself with all due processes to mitigate further actions against you.

Regards,

VINCENT & REES, LC

David M. Rees
Attorney for Great China Mania Holdings, Inc.

Cc: Yau Wai Hung



175 S. Main Street, 15th Floor
Salt Lake City, UT 84111

801.303.5730
801.355.5005



September 5, 2012

PRISM Investments

To: Agents and Principals of PRISM Investments;

Pursuant to discussions and our good faith attempt to resolve this issue we agreed to wait until September 5th to either return the shares to our client or make a payment in trust as recompense. That time has now expired and neither the shares nor any payment has come forth on behalf of our client. In fact, we find it particularly egregious and repugnant that our good faith attempt resulted in yet another fraudulent scheme with the creation of fake bank documents. You leave us no choice but to terminate all attempts to resolve this matter through discussion and to further abandon any hope of witnessing honest efforts from your offices leading to a positive resolution. We are therefore proceeding with our best efforts to pursue legal proceedings at the fullest extent allowable under law. You are strongly advised to conduct yourself with all due processes to mitigate further actions against you.

Regards,

VINCENT & REES, LC

David M. Rees
Attorney for Great China Mania Holdings, Inc.

Cc: Yau Wai Hung

175 S. Main Street, 15th Floor
Salt Lake City, UT 84111

801.303.5730
801.355.5005



September 5, 2012

EIGER Investments

To: Agents and Principals of EIGER Investments;

Pursuant to discussions and our good faith attempt to resolve this issue we agreed to wait until September 5th to either return the shares to our client or make a payment in trust as recompense. That time has now expired and neither the shares nor any payment has come forth on behalf of our client. In fact, we find it particularly egregious and repugnant that our good faith attempt resulted in yet another fraudulent scheme with the creation of fake bank documents. You leave us no choice but to terminate all attempts to resolve this matter through discussion and to further abandon any hope of witnessing honest efforts from your offices leading to a positive resolution. We are therefore proceeding with our best efforts to pursue legal proceedings at the fullest extent allowable under law. You are strongly advised to conduct yourself with all due processes to mitigate further actions against you.

Regards,

VINCENT & REES, LC

David M. Rees
Attorney for Great China Mania Holdings, Inc.

Cc: Yau Wai Hung

175 S. Main Street, 15th Floor          801.303.5730          
Salt Lake City, UT 84111                801.355.5005

September 5, 2012

SEO Group Consultants

To: Agents and Principals of SEO Group Consultants;

Pursuant to discussions and our good faith attempt to resolve this issue we agreed to wait until September 5th to either return the shares to our client or make a payment in trust as recompense. That time has now expired and neither the shares nor any payment has come forth on behalf of our client. In fact, we find it particularly egregious and repugnant that our good faith attempt resulted in yet another fraudulent scheme with the creation of fake bank documents. You leave us no choice but to terminate all attempts to resolve this matter through discussion and to further abandon any hope of witnessing honest efforts from your offices leading to a positive resolution. We are therefore proceeding with our best efforts to pursue legal proceedings at the fullest extent allowable under law. You are strongly advised to conduct yourself with all due processes to mitigate further actions against you.

Regards,

VINCENT & REES, LC

David M. Rees
Attorney for Great China Mania Holdings, Inc.

Cc: Yau Wai Hung